*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
KISOR, DALY, and MIZER
Appellate Military Judges

—————————

**UNITED STATES**
*Appellee*

**v.**

**Dean AVELLANEDA**
Gunner's Mate Senior Chief Petty Officer (E-8), U.S. Navy
*Appellant*

**No. 202300116**

—————————

Decided: 30 April 2024

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
Angela J. Tang (arraignment)
Andrew E. Carmichael (trial)

Sentence adjudged 31 January 2023 by a special court-martial convened at Naval Submarine Base Groton, Connecticut, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to paygrade E-6.

For Appellant:
*Captain Kimberley D. Hinson, JAGC, USN*

For Appellee:
*Major Mary Claire Finnen, USMC*
*Lieutenant Michael A. Tuosto, JAGC, USN*

Senior Judge KISOR delivered the opinion of the Court, in which Judge DALY and Judge MIZER joined.

---

**PUBLISHED OPINION OF THE COURT**

---

KISOR, Senior Judge:

Appellant was convicted, pursuant to his pleas, of one specification of dereliction in the performance of his duties, in violation of Article 92, Uniform Code of Military Justice [UCMJ],[1] and one specification of obstructing justice, in violation of Article 131b, UCMJ.[2]

Appellant appealed his findings and sentence to this Court under Article 66(b)(1), UCMJ, which allows a convicted servicemember to provide a notice of appeal to this Court. Appellant asserts three assignments of error (AOEs): (1) whether the plea agreement violates public policy by containing a specific sentence to be adjudged; (2) whether the plea agreement violates Rule for Courts-Martial [R.C.M.] 705 by depriving Appellant of complete sentencing because it called for a set sentence; and (3) whether the adjudged sentence is inappropriately severe, claiming it does not reflect the facts and circumstances of the offenses and Appellant's character and Naval service. We find no prejudicial error and affirm.

## I. BACKGROUND

Appellant held a position on the staff of the Naval Academy Preparatory School in Newport, Rhode Island. The Commanding Officer issued an order to the students not to obtain any new tattoos over the winter break. Accordingly, in December, 2020, the Executive Officer informed the students and staff that a tattoo inspection would occur upon the students' return after the winter holidays. Appellant had the duty to "fully perform" tattoo inspections "in a professional manner" on the male students and to report any unauthorized tattoos.[3]

---

[1] 10 U.S.C. § 892.

[2] 10 U.S.C. § 931b.

[3] Pros. Ex. 1. The students were to be inspected wearing shower shoes, shorts, and no shirt. If necessary, the shorts were to be "hiked up."

However, Appellant did not do a proper tattoo inspection. During his plea colloquy, stated that on 25 January 2021 during this evolution, he negligently failed to fully inspect several midshipmen candidates (by not looking directly at them during the inspection). In certain other cases, he failed to document on a spreadsheet the new tattoos that he had observed during the inspection.[4]

Later, in February 2021, Appellant became aware that an investigation into unauthorized tattoos had commenced and a "Body Alteration Inspection" was imminent.[5] One of the midshipmen candidates who Appellant had inspected had in fact obtained a large tattoo that ran the entire length of his back. Appellant falsely recorded that the midshipman candidate had not obtained any new tattoos [6] This midshipman candidate approached Appellant and disclosed to him that he was planning to provide an altered (backdated) photograph intended to fool the investigator into thinking that the new tattoo was, in fact, not new.[7] Appellant encouraged him to provide this doctored photograph to the investigator as evidence.[8]

Appellant pleaded guilty to one specification of negligent dereliction of duty for conducting an inadequate tattoo inspection, and one specification of obstruction of justice for encouraging the midshipman candidate to provide a backdated photograph of his back to mislead the person conducting the investigation. As part of Appellant's plea agreement, he was allowed to plead guilty to the two specifications by exceptions and substitutions, and the remainder of the charges and specifications were to be withdrawn upon the announcement of sentence and dismissed without prejudice "to ripen into prejudice upon completion of appellate review where the findings and sentence have been upheld."[9]

Additionally, the convening authority agreed to favorably endorse Appellant's request to retire, and further agreed that Appellant would not be punitively separated from the Navy, would not serve any confinement, and would

---

[4] R. at 40-41.

[5] Pros. Ex. 1 at 3.

[6] R. at 92.

[7] Pros. Ex. 1 at 3. The photograph had been altered to indicate that it had been taken on 9 July 2020.

[8] R. at 46-48.

[9] App. Ex. XVI at 6, para. 9(a). Although this action did not happen at the court-martial after the announcement of the sentence and is not reflected on the charge sheet, the Entry of Judgment reflects that this action was, in fact, taken.

not be adjudged any forfeitures or fines. In fact, the only punishment in the plea agreement was that "[r]eduction to the grade of E-6 will be adjudged."[10]

During the sentencing phase of the court-martial, Appellant presented evidence from his service record of his numerous awards and favorable evaluations, 26 character letters, and dozens of photographs documenting his career and his family.[11] He also submitted evidence of the financial impact that reduction in paygrade would have on his pension.[12] And he made a lengthy unsworn statement in question-and-answer form that spans 45 pages of the transcript.[13] Although the plea agreement provided that the military judge was required to adjudge a reduction to the paygrade of E-6, the military judge recommended that the convening authority suspend reduction below E-7. The convening authority considered, and denied, the clemency request and approved the sentence as adjudged.

## II. DISCUSSION

Appellant raises three assignments of error challenging the validity of the plea agreement he voluntarily entered into with the convening authority. He requests that this Court set aside the findings and sentence or, in the alternative, disapprove the adjudged reduction below  E-7.[14] We will address each of these assignments of error in turn.

## A. Did the plea agreement violate public policy by containing a specific sentence to be adjudged?

*1. Standards of Review and Applicable Law.*

This Court reviews *de novo* whether a term in a plea agreement violates public policy[15] A plea agreement that contains a specific sentence to be adjudged does not violate public policy merely because the exact sentence is

---

[10] App. Ex. XVI at 6, para. 10.

[11] Def. Exs. A-F.

[12] Def. Ex. D.

[13] R. at 123-68.

[14] Appellant's Br. at 38.

[15] *United States v. Rivero*, 82 M.J. 629, 633 (N-M. Ct. Crim. App. 2022) (citing *United States v. Sunzeri*, 59 M.J. 758, 760 (N-M. Ct. Crim. App. 2004)).

agreed upon.[16] This Court may not approve a sentence which is inappropriately severe.[17]

### 2. *The plea agreement in this case.*

The plea agreement in this case required the military judge to impose a specific sentence, which included only a reduction to E-6 and prohibited the military judge from imposing any other punishments, including a punitive discharge, confinement, or any fines or forfeitures.[18] This plea agreement was the product of plea negotiations, wherein Appellant was represented by counsel, and Appellant stated that he was satisfied with his counsel, was pleading guilty voluntarily, and understood each provision of the plea agreement.[19]

### 3. *A specific sentence bargained for in a plea agreement does not violate public policy.*

Appellant contends that his bargained-for plea agreement violates public policy because it required the military judge to award a specific sentence. Appellant acknowledges that "[c]urrent rules permit a plea agreement with a specific sentence to which the military judge must adhere."[20] But Appellant also describes this provision of his plea agreement as "prohibited and unenforceable."[21] Regardless, this argument is foreclosed by this Court's published opinion in *United States v. Rivero*, which remains binding precedent. Accordingly, this argument is wholly without merit.

---

[16] *Rivero*, 82 M.J. at 634-35. See also FED. R. CRIM. P. 11(c)(1)(B)).

[17] *See* Art. 66, UCMJ.

[18] App. Ex. XVI.

[19] R. at 64-68.

[20] Appellant's Br. at 8 (citing R.C.M. 1002(a)(2)).

[21] Appellant's Br. at 11. Appellant does not concede that Article 53a of the Uniform Code of Military Justice allows a specific sentence. *See* Appellant's Br. at 24, n. 2.

**B. Did the plea agreement violate R.C.M. 705 by depriving Appellant of complete sentencing proceedings because it called for a set sentence?**

*1. Standards of Review and Applicable Law.*

Whether a provision of a plea agreement violates appellate decisions or public policy is a question we review *de novo.*[22] Prohibited terms and conditions for plea agreements are outlined in R.C.M. 705(c)(1). Rule 705(c)(1)(B) specifically restricts the deprivation of certain rights by plea agreements, including "the right to complete presentencing proceedings." However, the existence of a bargained-for specific sentence in a plea agreement does not deprive an accused of complete sentencing proceedings.[23]

*2. Appellant was afforded complete sentencing proceedings in this case.*

Appellant contends, essentially, that his own bargaining for a set sentence in his plea agreement deprived him of complete sentencing proceedings because the military judge had to "fall in line and award the previously decided sentence."[24] And in his Reply, Appellant states that "when the military judge awards a sentence in accordance with a plea agreement, he is merely awarding the sentence the [convening authority] wants."[25] The near-perfect circularity of Appellant's logic is pellucid because Appellant bargained for the exact sentence that he now contends deprived him of his right to complete sentencing proceedings. The sentence limitation that he sought, and achieved, also precluded the judge from awarding any confinement, forfeitures, fines, or a punitive discharge.[26] Appellant agreed to be reduced to paygrade E-6 (but no further), and to request a transfer to the Fleet Reserve. The convening authority agreed to favorably endorse his request.[27] So Appellant's complaint that the judge had to "fall in line" with all of the protections he had negotiated for seems disingenuous.

Regarding the sentencing proceeding itself, it was complete. Although Appellant agreed not to call live witnesses at Government expense, this did not

---

[22] *Sunzeri*, 59 M.J. at 760.

[23] *See United States v. Harvey*, No. 202100309, 2023 CCA LEXIS 16, at *4 (N-M. Ct. Crim. App. Jan. 19, 2023) (citing *Rivero*, 82 M.J. at 632-33).

[24] Appellant's Br. at 24.

[25] Appellant's Reply at 2.

[26] App. Ex. XVI.

[27] App. Ex. XVI.

interfere with his ability to present an effective case in extenuation and miti-gation.[28] Appellant presented 26 character letters and dozens of photographs documenting his career and his family.[29] He also submitted evidence from his service record of his numerous awards and favorable evaluations, and evidence of the financial impact that the reduced paygrade would have on his pension.[30] He made a detailed unsworn statement.[31] And the sentencing case was effec-tive -- the military judge recommended that the convening authority suspend reduction below the paygrade of E-7.[32]

The military judge's recommendation for suspension of part of a sentence is not binding on the convening authority.[33] That the convening authority in this case approved the bargained-for sentence as adjudged is not the result of incomplete sentencing proceedings, but rather reflects that the convening au-thority denied the military judge's recommendation for clemency.

## C. Is the adjudged sentence inappropriately severe?

### 1. Standards of Review and Applicable law.

We review sentence appropriateness *de novo*.[34] The Courts of Criminal Ap-peals have broad power to moot claims of prejudice by "affirm[ing] only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved."[35] This analysis requires an "individualized consideration of the particular accused on the basis of the nature and seriousness of the of-fense and the character of the offender."[36] In exercising this function, we seek to ensure that "justice is done and that the accused gets the punishment he

---

[28] App. Ex. XVI at 6.

[29] Def. Exs. A-F.

[30] Def. Ex. D.

[31] R. at 123-68.

[32] R at 179.

[33] *United States v. Williams*, No. 202300217, 2024 CCA LEXIS 111, at \*5, n. 21 (N-M. Ct. Crim. App. Mar. 15, 2024) ("Of course, a military judge's clemency recommen-dation is non-binding on the convening authority.") (citing R.C.M. 1009(f) and (g))).

[34] *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006).

[35] *United States v. Wheelus*, 49 M.J. 283 (C.A.A.F. 1998); *See United States v. Bell*, 60 M.J. 682 (N-M. Ct. Crim. App. 2004.)

[36] *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (citation and internal quotation marks omitted).

deserves."[37] And in making this assessment, we analyze the record as a whole.[38]

Appellate courts, of course, do not have clemency power that being an executive function of the convening authority.[39] Clemency involves bestowing mercy and is the prerogative of the convening authority and the Secretary of the applicable military Department rather than the military appellate courts.[40]

However, the result may be the same, in the end.[41]

*2. The sentence in this case is not inappropriately severe.*

Despite negotiating a favorable plea agreement, that dismissed several charges and protected Appellant from both confinement and being punitively discharged (which would have resulted in, as a collateral consequence, the loss of his pension) Appellant now contends that the sentence of reduction to E-6 is inappropriately severe.[42]

Appellant correctly states that "[b]ecause this Court has upheld the current plea agreement process, allowing minimum and maximum punishments to be the same, 'the role of trial judges (and appellate judges) as ultimate assessors of sentence appropriateness has become all the more important.'"[43] The Government, for its part, agrees with this general proposition. The Government

---

[37] *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988).

[38] *Healy*, 26 M.J. at 395-97.

[39] *Wheelus*, 49 M.J. at 283 (citing *Healy*, 26 M.J. at 395).

[40] *See generally Healy,* 26 M.J. at 395.

[41] The line between sentence appropriateness power and clemency power can be unclear. But it is a longstanding power of military appellate courts, in the interests of justice, to substantially lessen the "rigor of a legal sentence." *United States v. Joyner*, 39 M.J. 965, 967-68 (Kean, J. *dissenting*) (A.F.C.M.R. 1994)(citing *United States v. Langford*, 6 U.S.C.M.A. 371, 378 (1955)). But a decision by a court of criminal appeals cannot be arbitrary or capricious, and must do justice with reference some legal standard. *See United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010) (further citations omitted).

[42] Appellant's Br. at 27.

[43] Appellant's Br. at 37 (quoting *United States v. Kerr*, No. 202200140, 2023 CCA LEXIS 434 (N-M. Ct. Crim. App. Oct 17, 2023)).

states, "if the military judge finds the sentence to be inappropriately severe, a military judge can – and should – reject the plea agreement in its entirety."[44]

The Government readily admits, as it must, that at trial "a military judge remains the ultimate assessor of sentence appropriateness."[45] In his Brief, Appellant posits that "[p]erhaps 'the military judge could have, and should have, simply rejected the plea agreement in its entirety.'"[46] (And in his Reply, Appellant goes further, contending that " . . . the military judge should have rejected the plea agreement.")[47] Although the military judge had the power to reject it, he did not.

This case is therefore readily distinguishable from *Kerr.* In *Kerr,* the military judge expressed profound reservations about accepting that plea agreement for that offender because of the severity of the sentence, which included a punitive discharge and 8 months of confinement.[48]

We held in *Kerr* that that the bad-conduct discharge for that appellant under the specific circumstances of that case was inappropriately severe and set it aside.[49] And the decision in that case was not a close call. In contrast, the military judge in this case, who accepted the plea agreement, after conducting a detailed colloquy with Appellant and his counsel, accepted the plea agreement without expressing any reservation.[50] Recommending some form of clemency after accepting a plea agreement, as the military judge did here, is qualitatively different than expressing deep reservation about the plea agreement itself, which the military judge here did not do, or rejecting the plea agreement entirely, which the military judge in *Kerr* did not know he could do.[51]

Furthermore, although not dispositive, when an accused who is represented by competent counsel bargains for a specific sentence, that is strong evidence that the sentence is not inappropriately severe and it will likely not

---

[44] Gov't Br. at 11 (citing *Kerr*, 2023 CCA LEXIS at *8 (further citations omitted).

[45] Gov't Br. at 11-12.

[46] Appellant's Br. at 37 (quoting *Kerr*, 2023 CCA LEXIS 434 at *8).

[47] Appellant's Reply at 4.

[48] *Kerr*, 2023 CCA LEXIS 434 at *8, n. 23.

[49] The bad-conduct discharge in *Kerr*, like here, was required to be adjudged by the plea agreement in that case. We did not find it necessary to delve into the causes of the failure of the plea bargaining process in that case.

[50] R. at 64-65.

[51] *Kerr*, 2023 CCA LEXIS 434 at *8, n. 23; *Nerad*, 69 M.J. 138.

be disturbed on appeal. In this case, at trial Appellant freely entered into this plea agreement because he was satisfied with these terms.

In sum, we do not believe this sentence of reduction to paygrade E-6, as bargained-for by Appellant and the Convening Authority (and ultimately approved by the Convening Authority) was inappropriately severe under the circumstances of this case. We have considerable power to adjust sentences, but we do not have equitable power to grant clemency.[52]

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[53]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[52] *Nerad*, 69 M.J. 145.

[53] Articles 59 & 66, UCMJ.